REGAN, Judge.
The plaintiff, Robert C. Stevens, filed this suit against the defendants, Joseph R. Mumphrey, Anthony J. Genusa, Harry P. Fletcher, Paul Gleber, Sam Barbara, Joseph St. Cyr, Salvador Lentini and John L. Coutrado, endeavoring to recover the sum of $30,000.00 for mental anguish, pain and *643 suffering which he asserts he incurred as the result of his illegal arrest, detention and mistreatment by the defendants.
The defendants answered and admitted the plaintiffs arrest by officers Paul Gel-ber and Joseph St. Cyr on April 5, 1963; however, they denied any mistreatment of him.
Judgment was rendered in favor of the plaintiff and against the defendants, Joseph St. Cyr and Sam Barbara, for the sum of $750.00. Judgment was in favor of the defendants, Joseph A. Mumphrey, Anthony J. Genusa, Harry P. Fletcher, Paul Gleber, Salvador Lentini, and John L. Coutrado, dismissing the plaintiff’s suit at his cost.
From that judgment, the plaintiff has prosecuted this appeal.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompasses both the facts and the law posed for our consideration, and the result which we have agreed should be reached.
“The events leading up to this suit are briefly as follows:
“The Kenner and Harahan police had been checking on obscene telephone calls. A man by the name of Howard was arrested and accoring to his testimony implicated the plaintiff, Stevens.
“The local police did not know Stevens by sight and requested Deputy Johnson of the Jefferson Parish Sheriff’s Department to point him out. Some time between 5 and 6 p. m. on April 5, 1963, Stevens was arrested without a warrant by defendants, St. Cyr and Barbara, both Harahan policemen. Plaintiff was in his yard when arrested and according to his witnesses, the arrest occurred about 5 p. m., St. Cyr testified it was between 5:45 and 6 p. m., whereas Barbara says the arrest occurred between 5 :45 and 6:30 p. m. Although there is testimony by one of the arresting officers that Deputy Johnson made the arrest, the Court is satisfied from the evidence that all Johnson did was point out plaintiff and he was arrested and was taken into custody by St. Cyr and Barbara.
“Plaintiff was brought to the Harahan Jail where he remained until approximately 7 p. m. when he was taken from the Harahan Jail to the Kenner Jail. His wife was brought to the Kenner Jail about 9 p. m. Around 11 o’clock that night, Justice of the Peace Roy Becnel, pursuant to a call by one of the defendants; went to the Kenner Jail, accepted an Affidavit and issued a warrant for the arrest of Stevens.
“Plaintiff was booked at the East Bank Parish Jail about 12:40 a. m. on April 6, 1963. He was released from the East Bank Jail about 6 p. m. on April 6 and was examined by Dr. Ambrose J. Pratt at 2:15 p. m. on April 7, at Flint-Goodridge Hospital.
“For some unknown reason plaintiff was rearrested and taken to the East Bank Parish Jail on April 7, 1963 at about 7 p. m. At the time of plaintiff’s booking on April 7, he complained of having been beaten while in the custody of the police and the evidence clearly showed that he exhibited marks on his body at that time.
“Plaintiff alleges that he was beaten both in the Harahan and Kenner Jails, that he was arrested without a warrant and seeks damages from the named defendants who were the police officers alleged to have been involved and the Marshals of Harahan and Kenner.
“All of the defendants deny that the plaintiff was mistreated in any way and the witnesses called by defendants corroborate their testimony.
“This suit was tried almost 5 years after the alleged occurrence and there are dis-crepencies in the testimony offered by both plaintiff and defendants which in some part may be explained by the time lapse.
“The most significant question in the case is whether or not plaintiff was beaten *644 or mistreated while in the custody of the Harahan and/or Kenner police. There is no claim that he was mistreated while in the East Bank Parish Jail.
“The opportunity for such beating existed while plaintiff was in the Harahan Jail for a period of approximately two hours from 5:15 to about 7:15 and for a period of about one and one-half hours from about 7:30 to 9:00 p. m. in the Kenner Jail. From 9 p. m. until plaintiff was booked at the East Bank Parish Jail his wife was with him and neither claims that he was mistreated in any way during that period.
“Without going into the evidence in detail, the Court is of the opinion that plaintiff has failed to carry the burden of proof to establish by the preponderance of the evidence that he was mistreated in the Harahan and/or Kenner Jails. The Court reaches this conclusion after evaluation of the testimony of all of the witnesses.
“Officers Lytell and Reed did not note anything unusual about plaintiff’s condition when he was transported from Kenner to the Parish Jail or when he was brought to get his wife at about 9 p. m. on April 6.
“Sergeant Habeny, the Desk Sergeant at the East Bank Jail, testified that when he booked plaintiff on April 6, there were no visible signs of injury and plaintiff did not ask for a doctor; that he checked every hour as is customary and plaintiff made no complaint of being mistreated.
“Both Deputy Johnson and Captain Sam LeBlanc of the Jefferson Parish Sheriff’s Department testified that when plaintiff was booked on the night of April 7, he did exhibit marks and bruises.
“It is of significance to the Court that plaintiff does not contend that he was mistreated in any manner by any of the Parish deputies. Kenner Deputies Lytell and Reed transported him to the Parish Jail on April 6. During the course of the evening, plaintiff was seen at various times by Parish officers, Johnson and Habeny as well as whatever other personnel may have been in the East Bank Jail. It is significant to the Court that the plaintiff does not contend that he was mistreated by Parish officers but neither did he make any complaints nor requested medical attention from any of the Parish officers. It is of particular significance that when he was re-arrested on April 7, he had no hesitancy in exhibiting marks and bruises to the Parish officers.
“Also of significance is the fact that plaintiff was released from the Parish Jail at about 6:15 p. m. on Saturday, April 6, 1963 and did not at that time seek medical attention, although he contends that he was spitting blood and was painfully injured. He testified that he went to Flint-Goodridge Hospital early the following morning, April 7, but was not seen by the doctor until approximately 2:15 p. m. No one connected with the hospital was called to show his condition or the time he arrived and the only uncontraverted factual evidence before the Court is that approximately 20 hours after plaintiff’s release from the Parish Jail he exhibited bruises on his body. While the doctor did testify that the bruises could have occurred as much as 24 hours before his examination, he also testified that the discoloration could appear within a few minutes or several hours.
“In addition to his own testimony and that of his wife, plaintiff’s witnesses as to his condition prior to being booked at the East Bank Parish Jail were Mattie Mitchell, Mabel Ellis, Hezekiah Ellis and Eason Tucker, Jr., Mattie Mitchell, Mabel Ellis and Hezekiah Ellis all testified that plaintiff’s face was swollen or appeared to be swollen the night of April 6. The photograph in evidence does not corroborate this testimony. All of the named witnesses also testified that plaintiff exhibited bruises, etc. on Sunday. However, at the time plaintiff had been out of jail at least 12 hours.
“The Court is of the opinion, after reviewing all of the evidence, that plaintiff has failed to establish his case by the preponderance of the evidence.
*645 “There is no doubt that plaintiff was illegally arrested. LSA R.S. 15:60 spells out the right of a peace officer to arrest a person without a warrant. Although the present criminal law permits an arrest for a misdemeanor without a warrant, where the misdemeanor was not committed in the presence of the officer, prior law required a warrant under the circumstances of this case. LSA R.S. 14:285, being a misdemean- or, an arrest without a warrant under the facts as disclosed by the evidence was clearly illegal. None of the exceptions permitting an arrest without a warrant apply. There was ample opportunity for the officers to secure a warrant after Howard implicated plaintiff and before taking plaintiff into custody.
“Not only was this plaintiff illegally arrested but he was held without being booked for a period in excess of 6 hours. The testimony revealed that he was not booked at either the Harahan or the Kenner Jails, and was not booked at all until he was brought to the East Bank Jail.
“The evidence satisfies the Court that plaintiff was placed under arrest by officers St. Cyr and Barbara, both Hara-han policemen. Deputy Johnson’s role was simply to point out plaintiff and he was present while he was arrested, handcuffed, placed in the car by St. Cyr and Barbara and brought to the Harahan Jail. The Court considers St. Cyr’s testimony that Johnson made the arrest as simply his conclusion not supported by evidence. St. Cyr and Barbara are responsible in damages to plaintiff for the illegal arrest.
“The authority of Marshals of municipalities has been the subject of recent litigation. No law has been cited to the Court under which Marshal John L. Cout-rado is responsible under State law for the actions of Harahan policemen. No ordinances of the City of Harahan have been offered in evidence. Marshall Cout-rado was not present at any time nor is there any evidence that he authorized plaintiff’s arrest or in fact knew anything about it until later notified.
“No special damages are alleged or proved. The Court considers $750.00 adequate compensation to plaintiff for the illegal arrest and detention. * * * ”
For the foregoing reasons, the judgment of the lower court is hereby affirmed.
Affirmed.